UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STUART BROWER,                          )
                                        )
                    Plaintiff,          )
                                        )
         v.                             )          2:15-cv-00337-JAW
                                        )
ADT LLC,                                )
                                        )
                    Defendant.          )

**ORDER ON MOTION TO DISMISS**

   A resident of California owning real estate in Boothbay Harbor, Maine, claims that a home security provider failed to notify him of a low temperature alarm at his Boothbay Harbor property and as a consequence, the water pipes in the residence burst, causing extensive damage. In addition to a breach of contract claim, the property owner asserts that the home security provider committed fraud. The Court grants the home security provider's motion to dismiss the homeowner's amended complaint to the extent the claim exceeds $500, the maximum amount of the damages limitations clause in the contract.

**I.     BACKGROUND**

   **A.     Procedural History**

   On February 4, 2015, Stuart L. Brower filed a complaint against Tyco Integrated Security LLC[1] in the Superior Court of Lincoln County, Maine. *Notice of*

---

[1]     In his original Complaint, Mr. Brower incorrectly labeled the Defendant as both Tyco Integrated Security LLC and ADT Security Services LLC. *See Compl.* at 1. Mr. Brower adopted the

*Removal* Attach. 1 *Compl.* (ECF No. 1) (*Compl.*).  On August 20, 2015, ADT LLC (ADT) filed a notice of removal based on diversity of citizenship.  *Notice of Removal* (ECF No. 1).  Following removal, ADT filed a motion to dismiss for failure to state a claim on August 27, 2015.  *Def.'s Mot. to Dismiss* (ECF No. 5).  Mr. Brower subsequently filed an amended complaint on September 16, 2016. *Am. Compl.* (ECF 12).  As a result, ADT withdrew its initial motion to dismiss (ECF No. 15) and filed a motion to dismiss Mr. Brower's Amended Complaint on October 7, 2015.  *Def.'s Mot. to Dismiss* (ECF No. 18) (*Def.'s Mot.*).  On October 28, 2015, Mr. Brower filed a response in opposition to ADT's motion to dismiss.  *Pl.'s Opp'n to Def.'s Mot. to Dismiss* (ECF No. 19) (*Pl.'s Opp'n*).  On November 3, 2015, the parties agreed to the dismissal of two counts in the Amended Complaint.  *Stipulation* (ECF No. 22).  On November 12, 2015, ADT filed a reply.  *Def.'s Reply in Supp. of Mot. to Dismiss* (ECF No. 25) (*Def.'s Reply*).

### B.    Factual Allegations Contained in the Amended Complaint

#### 1.    The Parties

Stuart L. Brower is a resident of Pasadena, California, who owns real estate located on Crest Avenue, Boothbay Harbor, Maine.  *Am. Compl.* ¶¶ 1–2.  ADT is a Delaware limited liability company that provides security and environmental monitoring equipment and services.  *Id.* ¶ 3, 5.

---

correct name, ADT LLC, in the Amended Complaint.  *See Am. Compl.* (ECF No.12) at 1.  This Order will refer to the Defendant as ADT LLC (ADT).

2

## 2.    The Alleged Facts[2]

Mr. Brower alleges that he purchased the Crest Avenue real estate in early 2005.  *Am. Compl.* ¶ 6.  He explains that he lived in California at the time of the purchase and intended to use the property for investment and vacation purposes.  *Id.* ¶ 7, 10.  Mr. Brower asserts that his principal occupation is unrelated to the purchase and sale of real estate, or to real estate management.  *Id.* ¶ 8.

According to Mr. Brower, ADT advertised heavily in his market and sent mailers to his residence.  *Am. Compl.* ¶¶ 11–12.  ADT allegedly held itself out as "America's #1 Home and Business Security Company."  *Id.* ¶ 9.  Mr. Brower ordered a security and environmental monitoring system from ADT for the property in Boothbay Harbor.  *Id.* ¶ 14.  ADT provided Mr. Brower with a preprinted form contract, and Mr. Brower claims that nearly none of the material terms of the contract was subject to negotiation.  *Id.* ¶ 15.  Under the contract, ADT agreed to provide, among other things, low temperature monitoring services.  *Id.* ¶ 16.  Mr. Brower set the alarm to activate at 40 degrees.  *Id.* ¶ 19.

Mr. Brower asserts that in February and March 2014, the property stood vacant.  *Am. Compl.* ¶ 17.  On February 5, 2014, the interior temperature at the property fell below the 40 degree threshold.  *Id.* ¶ 18.  According to Mr. Brower, ADT received the low temperature alarm and subsequently made one telephone call each

---

[2]    In considering a motion to dismiss, a court is required to "accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiff []."  *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) (quoting *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001)).

to Mr. Brower and Mr. Brower's designated representative.  *Id.* ¶¶ 21–22.  However, ADT did not connect with either individual, and ADT allegedly did not leave any messages.  *Id.* ¶¶ 22–23.  Instead, Mr. Brower contends that ADT silenced the alarm at its monitoring station and took no further action to alert anyone of the low temperature alarm.  *Id.* ¶¶ 24–25.

Weeks later, Mr. Brower's agent visited the property and discovered a local alarm continuing to sound on the premises.  *Am. Compl.* ¶ 26.  Mr. Brower states that one or more water pipes in the house broke, and that water flowed into the house over the course of several weeks, causing more than $200,000 in damage to the property.  *Id.* ¶¶ 27–28.

According to Mr. Brower, ADT represented that "it would notify [Mr. Brower] of a low temperature condition."  *Id.* ¶ 48.  Mr. Brower contends, however, that ADT actually adhered to "a policy by which it would make a very limited attempt to provide notification."  *Id.* ¶ 6.

### C.   Counts in the Amended Complaint[3]

#### 1.   Count I: Breach of Contract

In Count I, Mr. Brower asserts a claim for breach of contract.  *Am. Compl.* ¶¶ 29–34.  He alleges that a breach occurred when ADT silenced its alarm and failed to take steps to actually notify Mr. Brower of the low temperature alarm.  *Id.* ¶¶ 31–33.

---

[3]      The Amended Complaint included two additional counts not listed here.  *Am. Compl.* ¶¶ 53–60.  Because the parties stipulated to the dismissal of these counts, this Order will not address them.  *Stipulation* (ECF No. 22).

Mr. Brower also seeks declaratory judgment pursuant to 14 M.R.S. § 5955. In particular, he asks the Court to declare that the contract is insufficiently definite because it is impossible to determine what ADT contracted to do in the event that the alarm sounded. *Am. Compl.* ¶¶ 37–38. To the extent that the document can be construed as a contract, he asks that the Court declare it a contract of adhesion. *Id.* ¶ 39. Additionally, Mr. Brower suggests that the Court should not enforce any otherwise valid limitations on liability and damages contained in the contract due to ADT's "willful and/or wanton misconduct[.]" *Id.* ¶ 33.

### 2.    Count III: Fraud

In Count III, Mr. Brower alleges fraud. *Am. Compl.* ¶¶ 44–52. Mr. Brower claims that ADT represented that it would notify him of a low temperature condition. *Id.* ¶48. Mr. Brower asserts that ADT made this representation when, in reality, ADT "had in place a policy by which it would make a very limited attempt to provide notification." *Id.* ¶ 49. Because ADT knew or should have known that he would rely on its representations, and because his property suffered damage as a result of his reliance, Mr. Brower asserts that ADT committed fraud. *Id.* ¶¶ 51–52.

## II.    THE PARTIES' POSITIONS

### A.    Defendant's Motion to Dismiss

ADT seeks dismissal of all counts in Mr. Brower's Amended Complaint.

### 1.    Count I: Breach of Contract

ADT first contends that Mr. Brower's breach of contract claim "fails because he agreed to waive his right to recover those damages when he entered into the contract." *Def. Mot.* at 7. ADT points to the contract's exculpatory language:

> **YOU AGREE THAT WE…ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY, OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT.**

*Id.* at 7.  ADT asserts that courts applying Maine law enforce similar exculpatory provisions.  *Id.* at 7 (collecting cases).

Alternatively, ADT argues that the contract limits Mr. Brower's recoverable damages to $500.  ADT references the contract's limited liability provision:

> **IF IT IS DETERMINED THAT WE…ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT.  THESE AGREED UPON DAMAGES ARE NOT A PENALTY.  THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.**

*Def.'s Mot.* at 8.  Again, ADT contends that "courts nationwide uphold limitation-of-damages provisions in alarm-service contracts."  *Id.* (collecting cases).  Thus, ADT asserts that the Court "may dismiss with prejudice all portions of Brower's contract claim seeking damages above $500." *Id.* at 9.

### a.   The Claims of Ambiguity and Adhesion

ADT next urges the Court to dismiss Mr. Brower's claims regarding the construction of the contract.  ADT insists that Mr. Brower's claims are "transparent attempt[s] to void Brower's contractual promises that bar his contract claim or

6

alternatively limit his recoverable damage." *Def.'s Mot.* at 10.  Responding to Mr. Brower's assertion that the agreement is a contract of adhesion, ADT argues that Mr. Brower "had the option for ADT to assume greater liability but chose not to do so." *Id.* at 10.  ADT identifies the relevant contractual language:

> **AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU.   YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AN AMENDMENT.**

*Id.* at 10.  According to ADT, this language demonstrates that the terms of the contract were subject to negotiation, and thus Mr. Brower's claim that the contract was one of adhesion should fail.  *Id.* at 10.

Moreover, ADT maintains that public policy considerations dictate "strict enforcement of risk-allocation provisions in security-alarm contracts." *Def.'s Mot.* at 11.  This is because "security-alarm companies are not insurers and [] mitigating exposure to indefinite consequential damages is essential to the survival of the security-alarm industry."  *Id.* at 11.  ADT explains that courts nationwide are "mindful of these concerns," *id.* at 11 n.6 (collecting cases), and that these courts consistently acknowledge "the need for and validity of risk-allocation provisions in alarm service contracts."  *Id.*  Indeed, ADT claims that "parties have been sanctioned for raising the very argument that Brower attempts to assert here."  *Id.* at 11 n.5 (citing *E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274 (1st Cir. 1990)).

### 2.   Count III: Fraud

ADT advances a number of reasons why Mr. Brower cannot properly assert a fraud claim against ADT.  First, ADT insists that "the failure to perform as promised, without more, does not constitute fraud." *Def.'s Mot.* at 13 (citing *Lavery v. Kearns*, 792 F. Supp. 847, 864 (D. Me. 1992)).  According to ADT, Mr. Brower's allegation that ADT had "a policy by which it would make a very limited attempt to provide notification" is not an allegation of fraud, but rather an allegation that ADT failed to perform one of its contractual obligations.  *Id.* at 12.  This alone, ADT alleges, does not constitute fraud.

Additionally, ADT contends that Rule 9(b) mandates dismissal of Mr. Brower's fraud claim.  ADT points out that Rule 9(b) requires plaintiffs who allege fraud to "state with particularity the circumstances constituting fraud or mistake." *Def.'s Mot.* at 14 (quoting FED. R. CIV. P. 9(b)).  ADT further explains that "to adequately state a fraud claim with particularity, plaintiffs must identify 'not only the statements that they contend are false or misleading, but also the circumstances demonstrating that fraud has been committed.'" *Id.* (quoting *In re One Bancorp Sec. Litig.*, 135 F.R.D. 9, 14 (D. Me. 1991)).  ADT contends that Mr. Brower "fails to state his fraud allegations with any particularity," and thus his fraud claims should fail.  *Id.* at 15.

More specifically, ADT argues that Mr. Brower fails to allege any statements or representations by ADT indicating that ADT would actually notify Mr. Brower of an alarm.  *Def.'s Mot.* at 12.  Here, ADT relies on *Jhaveri v. ADT Sec. Servs., Inc.*, No. 2:11-CV-4426-JHN, 2012 WL 843315, 2012 U.S. Dist. LEXIS 38100 (C.D. Cal. Mar. 6, 2012), *aff'd in part, rev'd in part and remanded on other grounds,* 583 F. App'x 689

8

(9th Cir. 2014). *Id.* at 13. ADT explains that in *Jhaveri*, the District Court granted the defendant's judgment on the pleadings as to the Jhaveris' fraud claim and held that the plaintiffs "did not provide specific facts unrelated to the breach of contract from which the court could infer that the statements were actually false at the time they were made." *Id.* at 13.

> ADT analogizes *Jhaveri* to the present case:
>
>> Brower alleges nothing to suggest that ADT intended to fraudulently induce him to enter into the Contract, that ADT's representation was false, or that ADT knew that the representation was false when it was made. Instead, he merely alleges that ADT represented that 'it would notify the Plaintiff of a low temperature condition.' But this is a contractual expectation, and not a representation of past or present fact as required to properly plead the elements of fraud.

*Id.* at 13–14 (citations omitted). Because Mr. Brower does not allege any specific facts unrelated to the breach of contract, ADT argues that the fraud claim must fail. *Id.*

Finally, ADT disputes Mr. Brower's fraud claim because ADT believes that it actually fulfilled its obligations under the contract. *Id.* at 14. The contract states:

> **16.** [sic][4] **ALARM MONITORING AND NOTIFICATION SERVICES.** We will provide alarm monitoring and notification services if the first page of this Contract includes a charge for such services…If you have elected for us to provide Supervisory Alarm or Trouble Alarm Monitoring services and such an alarm is received at our alarm monitoring center, we will attempt to notify the representative that you designate.

*Def.'s Mot.* at 3.[5] ADT points out that the Amended Complaint admits that ADT "made two attempts to notify Brower." *Id.* at 14. This, according to ADT, constitutes

---

[4]     In its motion to dismiss, ADT numbers this excerpted paragraph incorrectly as 16, not 18. *See Def.'s Mot.* at 3.

[5]     The page of the contract containing this quoted language does not appear in the exhibit appended to ADT's motion to dismiss. *Def.'s Mot.* (ECF No. 5). However, ADT quotes the contractual

an "attempt" under the language of the contract. *Id.* Because ADT fulfilled its obligations, and because Mr. Brower can point to no false statement by ADT, ADT argues that Mr. Brower's fraud claim must fail. *Id.*

### B.     The Plaintiff's Response

#### 1.     Count I: Breach of Contract

The Plaintiff reiterates that ADT breached its contract by failing to actually notify Mr. Brower. *Pl.'s Opp'n* at 2–3. In response to ADT's reliance on the contract's waiver of liability, Mr. Brower asserts that "the contract does not contain language that purports to prevent an action for breach." *Id.* at 3.

#### a.     The Claims of Ambiguity and Adhesion

##### i.     The Contract is Insufficiently Definite

First, Mr. Brower maintains that the terms of the contract are "insufficiently definite." *Pl.'s Opp'n* at 6. Citing *Rice v. Cook,* 2015 ME 49, ¶ 11, 115 A.3d 86, Mr. Brower stresses that a contract must be sufficiently definite. *Id.* at 7. Mr. Brower agrees that the contract required ADT to "attempt to notify" him. *Id.* at 6. However, Mr. Brower points out that "there is nothing specific in the contract…as to how such an attempt should be made, nor as to what would constitute an adequate attempt to be considered performance under the contract." *Id.* at 6.

Mr. Brower also cites *Dairy Farm Leasing Company, Inc. v. Hartley*, 395 A.2d 1135, 1141 (Me. 1978):

> [W]here a standard-form, printed contract is submitted to the other on a "take it or leave it" basis, upon equitable principles the provisions of

---

language in its motion to dismiss, *Def.'s Mot.* at 3, and the missing page correctly appears in the exhibit appended to ADT's Reply. *Def.'s Reply* Attach 1 *Contract Exemplar* (ECF No. 25) (*Exemplar*).

the contract are generally construed to meet the reasonable expectations of the party in the inferior bargaining position.

*Pl.'s Opp'n* at 8.  Mr. Brower emphasizes that, "at least in the context of an ambiguous contract, it may be enough that one party had *little* bargaining power, and not necessarily *no* bargaining power," citing *Barrett v. McDonald Investments, Inc.*, 2005 ME 43, ¶ 18, 870 A.2d 146.  *Id.* at 8 (emphasis in original).  Because a contract must be sufficiently definite, Mr. Brower contends that "the Court or a jury must make a determination as to whether or not a contract exists and, if so, what the terms of that contract may be[.]"  *Id.* at 7.

### ii.   The Contract is a Contract of Adhesion

Alternatively, Mr. Brower believes that the contract is a contract of adhesion. Mr. Brower highlights that ADT provided him with a preprinted form, that "nearly none" of the material terms was subject to negotiation, and that ADT "vastly overreached in exploiting its superior bargaining position[.]"  *Pl.'s Opp'n* at 8.  In particular, Mr. Brower insists ADT exploited its bargaining position "by drafting a contract that requires the Plaintiff to pay the Defendant for services, yet fails to provide terms to which the Defendant may be held, and purports to limit the Plaintiff's ability to recover for injuries the defendant causes."  *Id.* at 8–9.  Thus, Mr. Brower argues that the terms of the contract are unconscionable and unenforceable, and that ADT should not be permitted to claim any of the provisions of the contract as defenses.  *Id.* at 9.

Moreover, Mr. Brower argues that the Court "should not base its decision on the pending motion on policy considerations."  *Pl.'s Opp'n* at 8.  In short, Mr. Brower

11

insists that the present issue is whether the complaint states a claim, not whether "the alarm services industry and/or the protection of the public calls for damages limitations[.]" *Id.* at 8.

### b.   The Limited Liability Clauses are Unenforceable

Mr. Brower agrees that "courts in Maine have upheld the validity of contractual restrictions on damages." *Pl.'s Opp'n* at 3.  Mr. Brower argues, however, that such contractual restrictions have limits. "Gross negligence or willful and wanton misconduct generally renders exculpatory provisions void." *Id.* at 3 (quoting *Reliance Nat. Indemn. V. Knowles Ind. Ser.*, 2005 ME 29, ¶ 15, 868 A.2d 220).  Mr. Brower insists that ADT "willfully and wantonly failed to discharge its contractual obligations," and thus the damages limitation should be eliminated. *Id.* at 5–6.

### 2.   Count III: Fraud

Mr. Brower asserts that the Amended Complaint alleges fraud with adequate specificity, thus satisfying Rule 9(b).  In particular, he alleges that the contract itself provides the specific evidence of the false representation. *Pl.'s Opp'n* at 9.  Mr. Brower's logic proceeds as follows: the contract was ambiguous regarding the steps ADT would take in the event the alarm sounded. *Id.* at 10.  Thus, the contract should be construed to mean that ADT would actually notify Mr. Brower. *Id.*  However, ADT had a policy that merely attempted to notify customers rather than actually notify them. *Id.*  By agreeing to the contract while simultaneously adhering to its policy of limited notification, ADT committed fraud. *Id.*

### C.   The Defendant's Reply

### 1.      Count I: Breach of Contract

ADT reiterates that it "did exactly what it was obligated to do under the Contract…[T]he Contract outlines ADT's duty to *attempt* to notify Brower and his designated representative." *Def.'s Reply* at 4 (emphasis in original).  Because the Amended Complaint concedes that ADT placed calls to Mr. Brower and his representative, ADT argues that there was no breach of contract.

### a.      The Claims of Ambiguity and Adhesion

### i.      The Contract is Unambiguous

ADT insists that the contract is valid and unambiguous.  According to ADT, the contract plainly states that ADT must "attempt" to notify Mr. Brower or a designated representative upon activation of an alarm. *Def.'s Reply* at 2–3.

### ii.      The Contract is Not a Contract of Adhesion

ADT stresses that no caselaw exists to support Mr. Brower's contention that he was subject to a contract of adhesion.  *Def.'s Reply* at 3.  Rather, ADT states that "jurisdictions nationwide hold that ADT's contract is not a contract of adhesion." *Id.* (collecting cases).  Moreover, ADT reiterates that the contract "allowed Brower the opportunity of having ADT assume more protection."  *Id.* at 3 n.3.  This, ADT claims, suggests that Mr. Brower did have bargaining power.  *Id.* at 3.

### b.      The Limited Liability Clauses are Enforceable

ADT asserts that the contractual limitation of damages is valid and that Maine courts enforce similar provisions.  *Def.'s Reply* at 3 (citing *Acadia Ins. Co. v. Buck Const. Co.*, 2000 ME 154, ¶ 18, 756 A.2d 515).  Additionally, given that ADT complied

with its obligations to attempt to notify Mr. Brower, ADT argues that its conduct does not rise to the level of willful or wanton conduct. *Id.* at 4. Moreover, ADT contends that even if it did breach the contract, "courts nationwide agree that a breach of a duty in an alarm services contract does not constitute wanton or grossly negligent conduct." *Id.* at 4–5. Finally, ADT points out that Brower has not asserted a claim for willful and wanton misconduct, and that "Maine *only* recognizes willful and wanton misconduct as a heightened form of a negligence claim, not as conduct in a solely contractual relationship." *Id.* at 5 n.4.

### 2.   Count III: Fraud

First, ADT emphasizes that Mr. Brower cannot adequately allege fraudulent intent simply by pointing to ADT's failure to perform future acts. *Def.'s Reply* at 6. Second, ADT asserts that Mr. Brower is attempting to "manufacture a fact issue." *Id.* at 6. ADT reaffirms that the contract merely states that ADT would "attempt" to notify Mr. Brower. *Id.* at 6. Finally, ADT reiterates that Mr. Brower's allegations "fall short of Rule 9(b)'s heightened pleading standard." *Id.* at 7.

## III.   LEGAL STANDARD

According to Rule 8(a), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has observed that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6)

provides that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  To survive a motion to dismiss, the plaintiff must plead "sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo,* 590 F.3d 31, 41 (1st Cir. 2009) (citing *Iqbal,* 556 U.S. at 678).

Furthermore, where fraud is pleaded, "a party must state with particularity the circumstances constituting fraud … Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).

In *Schatz*, the First Circuit illuminated the proper analytic path:

> Step one: isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.  Step two: take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.

*Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (internal citations omitted).  In addition, "when 'a complaint's factual allegations are expressly linked to—and admittedly depend upon—a document (the authenticity of which is not challenged),' then the court can review it upon a motion to dismiss." *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 34 (1st Cir. 2001) (quoting *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998)); *see also Trans-Spec Truck Serv., Inc. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008) (explaining that a court may consider any documents attached to the complaint when ruling on a motion to dismiss, including any other documents "'integral to or explicitly relied

upon in the complaint, even though not attached to the complaint'") (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000)).

Although the Court must accept all factual allegations in the complaint as true, it is "not bound to credit 'bald assertions, unsupportable conclusions, and opprobrious epithets.'" *Campagna v. Mass. Dep't of Envtl. Prot.*, 334 F.3d 150, 155 (1st Cir. 2003) (quoting *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 64 (1st Cir. 2004)). Instead, "plaintiffs are obliged to set forth in their complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory.'" *Dartmouth Review*, 889 F.2d at 16 (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

## IV.   DISCUSSION

The Court first addresses Mr. Brower's claims that the terms of the contract are insufficiently definite or, alternatively, that the contract is a contract of adhesion. The Court then proceeds to the breach of contract and fraud claims.

Mr. Brower referenced the contract in its Amended Complaint, and ADT attached it to its motion to dismiss and reply. As the terms of the contract are integral to the pleadings, the Court will consider the terms in evaluating the motion to dismiss. *See Alt. Energy*, 267 F.3d at 34; *Trans-Spec Truck Serv.*, 524 F.3d at 321.

### A.   Declaratory Judgment

#### 1.   Ambiguity within the Contract

Under Maine law, "[d]etermining whether or not a contract is ambiguous is a question of law." *Workgroup Tech. Partners, Inc. v. Anthem, Inc.*, No. 2:15-CV-002-JAW, 2016 WL 424960, at *15, 2016 U.S. Dist. LEXIS 14007, at *44 (D. Me. Feb. 3, 2016) (quoting *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989). "Contract language is only 'ambiguous when it is reasonably susceptible [to] different interpretations.'" *Id.* (alteration in original) (quoting *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800). If a court determines that a contract is unambiguous, "its interpretation is also a question of law." *Id.* (quoting *Am. Prot.*, 2003 ME 6, ¶ 11, 814 A.2d 989). "On the other hand, if the contract is ambiguous, then 'its interpretation is a question of fact for the factfinder.'" *Id. (*quoting *Am. Prot.*, 2003 ME 6, ¶ 11, 814 A.2d 989).

"The interpretation of an unambiguous contract 'must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence.'" *Id. (*quoting *Am. Prot.*, 2003 ME 6, ¶ 11, 814 A.2d 989). "[A] contract should 'be construed to give force and effect to all of its provisions' and not in a way that renders any of its provisions meaningless." *Id. (*quoting *Am. Prot.*, 2003 ME 6, ¶ 12, 814 A.2d 989).

Paragraph 18 of the contract provides:

**18.   ALARM MONITORING AND NOTIFICATION SERVICE.** We will provide alarm monitoring and notification services if the first page of this Contract includes charges for such services… If you have elected for us to provide Supervisory Alarm or Trouble Alarm monitoring services and such an alarm is received at our alarm monitoring center, we will attempt to notify the representative you designate.

17

*Def.'s Reply* Attach 1 *Contract Exemplar* at 3 (ECF No. 25) (*Exemplar*).  In the view of the Court, a plain reading of this contractual provision is not reasonably susceptible to different interpretations.  The contract states that ADT "will attempt to notify" Mr. Brower's chosen representatives in the event of an alarm.  Given its plain effect, the provision envisions exactly what ADT did in the present case.  Upon receiving the alarm, ADT placed one call each to Mr. Brower and his designated representative.  *Am. Compl.* ¶ 22.  In other words, ADT made an "attempt to notify" Mr. Brower and his representative pursuant to the contract.

Mr. Brower correctly points out that there is nothing specific in the contract about how ADT should have attempted to contact Mr. Brower.  *Pl.'s Opp'n* at 6.  However, the fact that parties may opt to add specificity to the terms of a contract does not render otherwise plain statements ambiguous.

### 2.     Contract of Adhesion

Mr. Brower argues that ADT exploited its superior bargaining position by offering a standardized contract that limits his ability to recover for injuries caused by ADT.  *Am. Compl.* ¶42.  In essence, Mr. Brower takes issue with the exculpatory and limited liability clauses contained in the contract.  *Exemplar* at 2, ¶ 6.  Under Maine law, a contract of adhesion is "a standardized contract that is imposed and drafted by a party with a superior bargaining position, and that gives the other party only the choice to accept or reject the contract."  *Barrett*, 2005 ME 43, ¶ 32, 870 A.2d 146 (citing *Dairy Farm*, 395 A.2d at 1139 n.3).  "In order for a contract provision to amount to an unenforceable contract of adhesion, there must exist 'some element of

overreaching by a party who exploits a vastly unequal bargaining position." *Wausau Mosinee Paper Corp. v. Magda*, 366 F.Supp.2d 212, 221 (D. Me. 2005) (internal quotation marks omitted) (quoting *Schroeder v. Rynel, Ltd.*, 1998 ME 259, ¶ 15, 720 A.2d 1164).  "When a contract of adhesion is exacted by the overreaching of a party, the defense of unconscionability may be asserted."  *Dairy Farm*, 395 A.2d at 1139 n.3.

Mr. Brower alleges that ADT provided him with a preprinted contract, and that "nearly none" of the material terms of the contract was subject to negotiation. *Am. Compl.* ¶ 15.  However, the contract did not give Mr. Brower only the choice to "accept or reject" the agreement.  *See Barrett*, 2005 ME 43, ¶ 32, 870 A.2d 146. Rather, as ADT points out, Mr. Brower had the option for ADT to assume greater liability but chose not to do so.  The paragraph containing the exculpatory and limited liability clauses reads, in relevant part:

> **6.     NO LIABILITY; LIMITED LIABILITY. ... AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU.  YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AN AMENDMENT.**

*Def.'s Mot.* Attach 1 *Contract* at 4 (ECF No. 4) (*Contract*).  This language indicates that Mr. Brower was able to dicker about the amount of liability that ADT would shoulder.  Mr. Brower points to no facts to the contrary.  Mr. Brower's Amended Complaint merely asserts that Mr. Brower had "little to no opportunity to dicker" about the contract's terms, and that ADT "vastly overreached."  These bald assertions

are insufficient to permit the Court to declare that the contract is a contract of adhesion.

Furthermore, the parties agree that courts applying Maine law enforce exculpatory provisions similar to those in this case.[6]  *Def.'s Mot.* at 7; *Pl.'s Opp'n* at 3; *Reed & Reed, Inc. v. Weeks Marine, Inc.*, No. 02-195-P-H, 2004 WL 256335, at *7, 2004 U.S. Dist. LEXIS 1663, at *23 (D. Me. Jan. 9, 2004) (upholding provision releasing a party from "any and all claims whatsoever arising out of…the work.").  In addition, the overwhelming majority of jurisdictions nationwide have upheld alarm-service contracts nearly identical to the one in this case.  Indeed, ADT appears to be a recurring defendant.  *See E.H. Ashley & Co. v. Wells Fargo Alarm Servs.*, 907 F.2d 1274 (1st Cir. 1990) (applying New Hampshire law); *Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 525 F. App'x 12, 15 (2d Cir. 2013); *Greenspan v. ADT Sec. Servs., Inc.*, 444 F. App'x 566, 569–70 (3d Cir. 2011); *Valenzuela v. ADT Sec. Servs., Inc.*, 475 F. App'x 115, 117 (9th Cir. 2012); *see generally* Marjorie A. Shields, Annotation, *Validity, Construction, and Application of Exculpatory and Limitation of Liability Clauses in Burglary, Fire, and Other Home and Business Monitoring Services Contracts*, 36 A.L.R.6th (2008).

*E.H. Ashley* is particularly instructive.  In that case, the plaintiff contracted with Wells Fargo to obtain a burglar alarm system.  907 F.2d at 1276.  The contract contained an exculpatory clause and limited Wells Fargo's liability to a maximum of

---

[6]     Mr. Brower argues, however, that ADT exhibited "willful and/or wanton misconduct" by breaching the contract, and that such misconduct voids the contract's exculpatory provisions.  *Am. Compl.* ¶ 33; *Pl.'s Opp'n* at 3–5.  The Court addresses this unpersuasive argument in section IV.C, below.

$985, equal to the plaintiff's annual service charge. *Id.* The contract also specified that Wells Fargo was not the plaintiff's insurer, *id.*, and that the plaintiff could negotiate a higher limitation of liability in exchange for higher annual fees. *Id.* at 1279. A theft occurred at the plaintiff's store, resulting in a loss of approximately $120,000. *Id.* at 1276. The plaintiff's insurer brought suit against Wells Fargo, claiming that the loss was "attributable to a defect in or negligent maintenance of the burglar alarm system installed by Wells Fargo." *Id.* The insurer claimed that the limitation of liability clause was an unconscionable contract of adhesion and should not be enforced. *Id.*

The First Circuit, applying New Hampshire law,[7] held that the limitation of liability clause did not transform the parties' agreement into an unconscionable contract of adhesion. *Id.* at 1278. The court reasoned that the parties dealt at arm's length and that the plaintiff had the opportunity to negotiate a higher level of liability for Wells Fargo. *Id.* at 1279. The contract also explicitly stated that Wells Fargo was not an insurer. *Id.* More generally, the First Circuit recognized that customers of an alarm-service company may face large losses as a result of the events that trigger alarms, and that these losses are beyond the ability of the alarm-service company to control. *Id.* at 1278–79. Thus, including a limited liability provisions in the contract was a "commercially sensible arrangement." *Id.* at 1279. The First Circuit also

---

[7]      New Hampshire law tracks Maine law on the issue of unconscionability in contracts of adhesion. In order to establish unconscionability under New Hampshire law, a party must prove that "(1) there is an absence of 'meaningful choice' on the part of one of the parties; and (2) the challenged contract terms are 'unreasonably favorable' to the other party." *E.H. Ashley* 907 F.2d at 1278 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)).

pointed to the "overwhelming weight of authority" that favored enforcing the limitation of liability clause, calling the result "obvious." *Id.* at 1280.  Indeed, the court sanctioned the plaintiff's insurer for even pursuing the argument on appeal. *Id.*

This Court takes its lead from *E.H. Ashley*.  Here, too, the contract specified that ADT was not Mr. Brower's insurer, and that Mr. Brower could negotiate a higher level of liability for ADT.  *Contract* at 4.  Moreover, Mr. Brower offers no evidence, apart from the mere existence of the limited liability clause, that the deal was anything other than an arm's length transaction.  Given these factors, and given the overwhelming weight of authority upholding limitation of liability clauses in alarm-services contracts, the Court holds that the contract is not a contract of adhesion.

### B.        Breach of Contract Claim

In Maine, the elements of breach of contract are: "(1) breach of a material contract term; (2) causation; and (3) damages."  *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248.  Mr. Brower suggests that he satisfies these elements because ADT failed to "actually" notify him of the low-temperature alarm, and that failure caused damage to his property.  *Am. Compl.* ¶¶ 33–34.

The contract states:

**18.   ALARM MONITORING AND NOTIFICATION SERVICE.**
We will provide alarm monitoring and notification services if the first page of this Contract includes charges for such services… If you have elected for us to provide Supervisory Alarm or Trouble Alarm monitoring services and such an alarm is received at our alarm monitoring center, we will *attempt* to notify the representative you designate.

*Exemplar* at 3 (emphasis added).  The parties agree that ADT placed one phone call each to Mr. Brower and Mr. Brower's designated representative.  *Am. Compl.* ¶ 22; *Def.'s Reply* at 4.  A plain reading of this provision convinces the Court that ADT was not obligated to actually notify Mr. Brower.  If the provision meant that ADT actually needed to notify Mr. Brower's representatives, then the words "attempt to" would be surplusage.  "[A] contract should 'be construed to give force and effect to all of its provisions' and not in a way that renders any of its provisions meaningless." *Workgroup Tech. Partners,* 2016 WL 424960, at *15 *(*quoting *Am. Prot.*, 2003 ME 6, ¶ 12, 814 A.2d 989); *see also* 17A Am. Jur. 2d Contracts § 378 ("No word or clause should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.").  Thus, the Court holds that ADT satisfied its contractual obligation to "attempt to notify" Mr. Brower when it placed a phone call to Mr. Brower as well as Mr. Brower's designated representative.

Yet even if ADT did breach the contract by failing to attempt to notify Mr. Brower, the exculpatory and limited liability clauses would compel the Court to dismiss Mr. Brower's breach of contract claims.  The contract's exculpatory provision provides:

> **6.   NO LIABILITY; LIMTED LIABILITY. ... YOU AGREE THAT WE...ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY, OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT.**

*Exemplar* at 2.  The limited liability provision provides:

23

**6. NO LIABILITY; LIMITED LIABILITY. … IF IT IS DETERMINED THAT WE…ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT. THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.**

*Exemplar* at 2. As discussed in section IV.A.2., the parties agree that courts applying Maine law enforce provisions similar to these, and the overwhelming majority of jurisdictions enforce these clauses in the context of alarm-service contracts. *See E.H. Ashley*, 907 F.2d 1274 (affirming the district court's decision to uphold the contract term limiting liability to $985); *Nirvana Int'l, Inc. v. ADT Sec. Servs., Inc.*, 881 F. Supp. 2d 556, 560 (S.D.N.Y. 2012), *aff'd*, 525 F. App'x 12 (2d Cir. 2013) (dismissing breach of contract claim in security alarm context because "[p]laintiff is bound by the limitation of liability provision."). As a result of these provisions, the Court would dismiss Mr. Brower's breach of contract claim and limit ADT's liability even if ADT did breach the contract.

Mr. Brower argues, however, that ADT exhibited "willful and/or wanton misconduct" by breaching the contract, and that such misconduct voids the contract's limits on liability. *Am. Compl.* ¶ 33; *Pl.'s Opp'n* at 3–5. Mr. Brower cites dicta from the Maine Law Court's decision in *Reliance* for the proposition that "[g]ross negligence or willful and wanton misconduct generally renders exculpatory

provisions void." *Pl.'s Opp'n* at 3 (quoting *Reliance Nat. Indem. V. Knowles Ind. Ser.*, 2009 ME 25, ¶ 15, 868 A.2d 220). He then asserts that the Law Court's use of the disjunctive "or" means that "willful and wanton" can refer to "any kind" of misconduct, even misconduct untethered from a spectrum of negligence. *Pl.'s Opp'n* at 3–4. Thus, per Mr. Brower's understanding, a breach of contract alone could evidence willful and wanton misconduct. *Id.* at 5.

Yet caselaw in Maine suggests that willful and wanton misconduct, to the extent it is recognized in Maine at all, only arises in the context of negligence. *See First Par. Congregational Church, U.C.C. v. Knowles Indus. Servs. Corp.*, No. CIV.A CV-01-289, 2003 WL 21386975, at *2, 2003 Me. Super. LEXIS 106, at *6–7 (Me. Super. May 21, 2003), *aff'd sub nom. Reliance*, 2005 ME 29, 868 A.2d 220 ("Maine does not recognize the concept of 'willful and wanton misconduct' in civil cases. There is negligence with compensatory damages and malice or its equivalent with punitive damages."); *Blanchard v. Bass*, 139 A.2d 359, 363 (Me. 1958) ("Wanton misconduct…cannot be entirely separated from negligence). Mr. Brower has not identified any independent legal duty in this case that would give rise to a claim sounding in negligence. Because Mr. Brower has not identified any independent legal duty that ADT owed to him, nor any caselaw supporting his reading of *Reliance*, his assertion that the contract's exculpatory provisions are void must fail. Yet even if a breach of contract alone evidenced willful and wanton misconduct, the exculpatory provision in this case would still stand because, as discussed above, ADT fulfilled its obligations under the contract.

### C.    Fraud

Mr. Brower's Complaint alleges fraud and therefore under Rule 9(b) must "state with particularity the circumstances constituting fraud." *Securities and Exchange Commission v. Tambone,* 597 F.3d 436, 441 (1st Cir. 2010) (en banc) (quoting FED.R.CIV.P. 9(b)).  The heightened pleading requirement serves "(1) to place the defendants on notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to discovering a wrong or as a 'strike suit'; and (3) to safeguard defendants from frivolous charges which might damage their reputations." *OfficeMax Inc. v. Cty. Qwik Print, Inc.*, 802 F. Supp. 2d 271, 279 (D. Me. 2011) (quoting *Cutler v. Fed. Deposit Ins. Corp.,* 781 F.Supp. 816, 818 (D. Me. 1992)).  "To satisfy this particularity requirement, the pleader must set out the 'time, place, and content of the alleged misrepresentation with specificity.'" *Goldenson v. Steffens*, 802 F. Supp. 2d 240, 257 (D. Me. 2011) (quoting *Tambone*, 597 F.3d at 442).  The First Circuit "has consistently required strict compliance with Rule 9(b)." *OfficeMax Inc.* 802 F. Supp. 2d at 279 (quoting *Bailey v. Linsco/Private Ledger Corp.*, 136 F.R.D. 11, 15 (D. Me. 1991)).

Mr. Brower's Complaint lacks the required specificity as to "time, place, and content." *See Goldenson*, 802 F. Supp. at 257.  Mr. Brower asserts that "ADT induced the Plaintiff to rely on its representation that it would notify the Plaintiff of a low temperature condition" but that ADT actually adhered to a policy "by which it would make a very limited attempt to provide notification." *Am. Compl.* ¶¶ 45–49.  Mr. Brower's Complaint suggests that ADT represented that it would actually notify Mr.

Brower of an alarm.  Yet nowhere in the Complaint does Mr. Brower specify when ADT represented that "it would notify" him.  Nor does Mr. Brower specify who made the representation, nor where or under what circumstances the representation occurred.  The only statement the Court can find on the subject is within the contract itself, which explicitly stated that ADT "will attempt to notify" Mr. Brower's designated contacts.  *Exemplar* at 3, ¶ 18.

In his opposition to the motion to dismiss, Mr. Brower contends that he has stated with perfect particularity "the circumstances constituting the fraud he asserts," *Pl.'s Opp'n* at 10, and that "the contract provides the evidence of false representation."  *Id* at 9.  Mr. Brower reasons that the contract is ambiguous and should be construed in his favor.  *Id.* at 10.  Mr. Brower then posits that if the contract is construed in his favor, ADT's policy of merely attempting to contact its clients renders the language of the contract false.  *Id.*  Therefore, per Mr. Brower's logic, ADT committed fraud when it simultaneously "promulgated the contract and the policy." *Id.*

This argument is not persuasive.  Mr. Brower's reasoning rests on the premise that the contract is ambiguous.   However, this Court has determined that the language of the contract is not ambiguous.  More generally, a disagreement regarding ambiguous language smacks of a contract interpretation dispute, not necessarily fraud.  Under Maine law, "[f]raud must be a misrepresentation of a past or present fact and not…an expression of opinion.*"  Ambrose v. New England Ass'n of Sch. & Colleges, Inc.*, 252 F.3d 488, 497 (1st Cir. 2001) (quoting *Coffin v. Dodge*, 76 A.2d 541,

543).   Mr. Brower's Complaint thus fails to meet the heightened pleading requirements of Rule 9(b), and the Court dismisses the claim.

## V.   EXCULPATORY AND LIMITATIONS CLAUSES

ADT asserts that if Mr. Brower has a legal claim against it, the contract limits his recoverable damages to $500.   *Def.'s Mot.* at 7.  The contract contains a backstop damages clause that is difficult to reconcile with its exculpatory provision.  ADT says that on the one hand, it is not liable under the contract to Mr. Brower, but on the other hand, if it is liable, Mr. Brower's recoverable damages are limited to the greater of $500 or 10% of the annual service charge that he pays under the contract.  *Contract* ¶ 6.   The Court need not resolve how to interpret the juxtaposition of these exculpatory and damages limitation clauses because the Court does not have jurisdiction over claims of only $500 between citizens of different states and may not issue advisory rulings.  *See Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, No. 11-10259, 2011 WL 5244936, at *9–10, 2011 U.S. Dist. LEXIS 127263, *24 (E.D. Mich. Nov. 3, 2011) ("If the first sentence served to bar all recovery, then there would be no need for a clause limiting liability"); *aff'd* 555 F. App'x 493, 503 (6th Cir. 2014) ("[W]e find the contract ambiguous as to ADT's liability").

The reduced amount in controversy does not allow this case to remain in this Court under its diversity jurisdiction.  28 U.S.C. § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States[.]").  In fact, Mr. Brower initiated his Complaint in state court and

if he wishes to do so, he may return to state court to adjudicate this portion of his claim. *Notice of Removal* Attach. 1, *Compl.* (ECF No. 1). The Court will therefore dismiss Mr. Brower's Amended Complaint without prejudice for so much of the claim is $500 or less so as not to affect his legal rights to initiate a new action in state court for up to $500, should he choose to do so. At the same time as the Court has concluded that Mr. Brower may not proceed against ADT for a claim of more than $500, the Court will grant that portion of the motion to dismiss with prejudice.

## VI.   CONCLUSION

The Court GRANTS in part and DENIES in part Defendant's Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b)(6). The Court DISMISSES without prejudice Plaintiff's Amended Complaint to the extent that the Plaintiff seeks damages of up to $500 and DISMISSES with prejudice Plaintiff's Amended Complaint to the extent the Plaintiff seeks damages in excess of $500. (ECF No. 18).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of September, 2016

29